IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

Plaintiff

v.

LUIS O. RÍOS RODRÍGUEZ

Defendants

CRIMINAL NO. 05-0394 (JAG)

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I. INTRODUCTION AND BACKGROUND

This matter is before the court on motion to suppress evidence filed by defendant Luis O. Ríos Rodríguez on May 25, 2006. (Docket No. 22.) Sometime between October 22, 2005 and October 24, 2005, "unknown persons" broke into the gun vault of the "Policía Municipal de Utuado" ("MPU"), in Utuado, Puerto Rico. Based on an inventory conducted on October 22, 2005, twenty-one pistols, twelve revolvers, and two shotguns were stolen. On October 26, 2005, agents of the "Policía de Puerto Rico's" ("PRP") Criminal Investigations Bureau in Utuado received a tip from an anonymous caller. The caller notified the PRP agents that the missing items were at a seemingly abandoned building . On that say, the PRP agents went to the building and through an open doorway saw two cloth duffle bags and, according to the defendant, "other items[.]" (Docket No. 22, Motion to Suppress, at 4, ¶ 2.) Those other items happened to include two bolt cutters and four to five

CRIMINAL 05-394 (JAG)                           2

police bulletproof vests. Based on the anonymous caller's advice and their observations at the property, the police assumed that the stolen guns were in the duffel bags and obtained a search warrant based on that information. The warrant, which meticulously described the premises, was executed on the night of October 26, 2005. Recovered was a virtual arsenal: seventeen pistols, eleven revolvers, four shotguns, a rifle, several radios and chargers, six pairs of licence plates, two (pairs) of handcuffs, a couple of knives, screwdrivers, a crowbar, four wall cameras, two pairs of bolt cutters, a plastic bag containing several cherry bombs, shotgun shells and ammunition, ten police type bullet proof vests and one military type bullet proof vest, and several bags of marijuana and marijuana sprouts. On October 28, 2005, PRP agents recovered six latent fingerprints from the firearms seized in the search and on November 4, 2005, PRP fingerprint technicians announced that they had found a match. According to the technicians, the prints belonged to the left hand thumb of Police Officer Luis O. Ríos Rodríguez, an active member of the MPU. The PRP began investigating officer Ríos and discovered that from October 22, 2005 until October 23, 2005 officer Ríos was observed entering the property where the weapons were recovered. On November 14, 2005, a complaint was filed by the United States (Docket No. 1) and a warrant was issued for officer Ríos' arrest. (Docket No. 2.) On November 16, 2005, officer Ríos, now defendant Ríos, was indicted. This motion was filed on May 25, 2006 and referred to me on that day. (Docket Nos. 22 & 23.) A hearing was scheduled on this matter for June 29, 2006. (Docket No. 25.) The

CRIMINAL 05-394 (JAG)                              3

United States filed its response on June 7, 2006. (Docket No. 27.)  On motion by defendant (Docket No. 30), I granted a continuance on June 28, 2006. (Docket No. 31.)

## II. DISCUSSION

The defendant claims that he has standing to contest the search of the building because he was seen "entering the property at various times prior to the date of the illegal search." (Docket No. 22, at 3, ¶ 2.)  First, a reading of the affidavit and the pleadings shows clearly that although the defendant was seen at the building prior to the search, that information was only discovered as a result of the search.  The theft of an arsenal of police weapons is a grievous threat to both public safety and public confidence in the government.  Thus, acting quickly on the information provided to them by the anonymous caller, the police obtained a search warrant.  The linchpin for the investigation of defendant Ríos was that, after the search warrant was executed, the police discovered his fingerprints on some of the weapons.  The police did not know in advance of the anonymous call that defendant Ríos was often seen at the property, nor did they even suspect in advance that the building was where the stolen guns were. Rather, upon "[f]urther investigation [it was] revealed that  . . . Municipal Police Luis O. Ríos Rodríguez was observed entering the property . . . . " (Docket No. 1-2, Affidavit, at 4, ¶ 6.)  Assuming, arguendo, that the police were aware that defendant Ríos frequently visited the property, he still would have no standing to contest any police action in relation to

CRIMINAL 05-394 (JAG)                    4

it. "[T]he Fourth Amendment protects people, not places." <u>Minnesota v. Carter</u>, 525 U.S. 83, 88 (1998) (quoting <u>Katz v. United States</u>, 389 U.S. 347, 351 (1967)). "The proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure." <u>Rakas v. Illinois</u>, 439 U.S. 128, 130 n.1 (1978).

Absent a showing of an expectation of privacy by showing that the property was his own dwelling, the plaintiff may assert that he had some other privacy interest in the searched location. "[T]he Fourth Amendment protects against government intrusion that upsets an 'actual (subjective) expectation of privacy' that is objectively "reasonable." <u>Bond v. United States</u>, 529 U.S. 334, 340-41 (2000) (quoting <u>Smith v. Maryland</u>, 442 U.S. 735, 740 (1979) (quoting <u>Katz v. United States</u>, 389 U.S. 347, 361 (1967) (Harlan, J., concurring))). "The ultimate question [for determining legitimacy of an expectation of privacy] is 'whether, if the particular form of [conduct] practiced by the police is permitted to go unregulated by constitutional restraints, the amount of privacy and freedom remaining to citizens would be diminished to a compass inconsistent with the aims of a free and open society.'" <u>United States v. Scott</u>, 975 F.2d 927, 930-31 (1st Cir. 1992) (quoting <u>United States v. Hendrickson</u>, 940 F.2d 320, 322 (8th Cir. 1991)). That the building is abandoned is stipulated to by the defendant. (Docket No. 22, at 3, ¶ 3.) To find that the defendant had created a reasonable expectation of privacy in an abandoned building that was not his place of dwelling simply by putting a lock on the door

CRIMINAL 05-394 (JAG)                    5

would be an affront to the protections provided by the Fourth Amendment. Defendant Ríos has as much (or better said, as little) expectation of privacy in the building as anyone else. The true owner of the building, as well as all others, could at any moment return and clip the lock. A person does not have an expectation of privacy at a remote abandoned property. United States v. Carasis, 863 F.2d 615, 617 (8th Cir. 1988) (noting that two abandoned metal buildings did not create an objective expectation of privacy). The police were told by the caller that the building was abandoned; they went in good faith to verify these reports. Having discovered a makeshift chained door, they did not force it open or otherwise attempt entry; they simply saw what was in plain view. "It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence." United States v. Meada, 408 F.3d 14, 23 (1st Cir. 2005) (quoting Harris v. United States, 390 U.S. 234, 236 (1968)). Such a view together with other information in the possession of the agents provided probable cause for the issuance of the search warrant. Had it not, the defendant, a now former law enforcement officer, would yet have no legitimate expectation of privacy in the place searched and items seized. A careful reading and rereading of the defendant's memorandum of law points to nothing but argument based upon what the government has produced to him in discovery, as the government well points out in its reply brief. Even the attack on the basis for the search warrant is too ethereal to attribute it more than a glancing portent. It must

CRIMINAL 05-394 (JAG)                  6

be understood that an affidavit for a search warrant must be interpreted "in a commonsense and realistic fashion." United States v. Ventresca, 380 U.S. 102, 108 (1965). Looking at the affidavit under the "totality of the circumstances" yardstick engendered by Illinois v. Gates, 462 U.S. 213, 232 (1983); see United States v. Diallo, 29 F.3d 23, 25 (1st Cir. 1994), and recognizing that a magistrate judge' "determination of probable cause should be paid great deference by reviewing courts," Illinois v. Gates, 462 U.S. at 236 (quoting Spinelli v. United States, 393 U.S. 410, 419 (1969)), I find that the search of this obviously abandoned house or structure was valid and the affidavit supporting the search warrant sufficient for a magistrate judge to have "a 'substantial basis for . . . conclud[ing]' that a search would uncover evidence of wrongdoing. . . ." Illinois v. Gates, 462 U.S. at 236 (quoting Jones v. United States, 362 U.S. 257, 271 (1960)). This conclusion follows the respect accorded to warrants and the principle that the resolution of doubtful or marginal cases (of which this is definitely not one) should be largely determined by the preference to be accorded to warrants. See Massachusetts v. Upton, 466 U.S. 727, 733 (1984).

### III. EVIDENTIARY HEARING

I granted the defendant's request for an evidentiary hearing, yet, upon further review it is evident that such a hearing is unnecessary. As the First Circuit notes, "[c]ourts are busy places." Evidentiary hearings "are the exception, not the rule . . . even in the criminal context. . . ." United States v. McGill, 11 F.3d 223, 225 (1st

CRIMINAL 05-394 (JAG)                    7

Cir. 1993). Criminal defendants, like all other litigants, are not entitled to evidentiary hearings of right. Rather, "[t]he test for conducting an evidentiary hearing in a criminal case should be substantive: did the defendant make a sufficient threshold showing that material facts were in doubt or dispute?" United States v. Panitz, 907 F.2d 1267, 1273 (1st Cir. 1990). As a result of this high threshold, most pretrial "motions can be 'heard' effectively on the papers." United States v. McGill, 11 F.3d at 225. As discussed above, claims against the warrant cannot be asserted vicariously. Even when assuming the facts to be as the defendant claims, he fails to meet the Panitz threshold as to the issue of standing. Absent standing, the merits of defendant Ríos' other claims are devoid of relevance.

## IV. CONCLUSION

My previous order (Docket No. 31) granting a continuance as to an evidentiary hearing on this matter is VACATED and the defendant's request for a hearing is DENIED.

In view of the above, I recommend that the defendant's motion to suppress be DENIED for lack of standing.

Under the provisions of Rule 72(d), Local Rules District of Puerto Rico, any party who objects to this report and recommendation must file a written objection thereto with the Clerk of this Court within ten (10) days of the party's receipt of this report and recommendation. The written objections must specifically identify the portion of the recommendation or report to which objection is made and the basis

CRIMINAL 05-394 (JAG)                    8

for such objections. Failure to comply with this rule precludes further appellate review. See Thomas v. Arn, 474 U.S. 140, 155 (1985); Davet v. Maccorone, 973 F.2d 22, 30-31 (1st Cir. 1992); Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985 (1st Cir. 1988); Borden v. Sec'y of Health & Human Servs., 836 F.2d 4, 6 (1st Cir. 1987); Scott v. Schweiker, 702 F. 2d 13, 14 (1st Cir. 1983); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir. 1980).

At San Juan, Puerto Rico, this 10th day of July, 2006.


                              S/ JUSTO ARENAS
                              Chief United States Magistrate Judge